Western Pennsylvania Conference of the United Methodist Church *v.* Everson Evangelical Church of North America et al., Appellants.

Argued September 27, 1973. Before JONES, C. J., EAGEN, O'BRIEN, POMEROY, NIX and MANDERINO, JJ.

*B. Frederick Becker,* with him *Ira B. Coldren, Jr.,* and *Coldren & Adams,* for appellants.

*W. Theodore Brooks,* with him *Reding, Blackstone, Rea & Sell,* for appellee.

OPINION BY MR. JUSTICE EAGEN, November 26, 1973:

The Western Pennsylvania Conference of The United Methodist Church filed an action in equity in the Court of Common Pleas of Fayette County, requesting the court to rule that the rights of ownership, possession, custody and control of the property of the defendant, The Everson Evangelical Church of North America, located in Everson, Fayette County, Pennsylvania, were in The United Methodist Church. The plaintiff also requested the court to enjoin the pastor, trustees and members of the defendant church from using its property, except in conformity with the Discipline and Constitution of The United Methodist Church. A separate action in equity was instituted in

the same court by the same plaintiff against The Mt. Olive Evangelical Church of North America, located in Bullskin Township, Fayette County, Pennsylvania, seeking the same relief.

After the pleadings were closed, the plaintiff filed a motion for judgment on the pleadings in both actions, pursuant to Pa. R. C. P. 1034. Since the legal issues and facts were essentially identical, the actions were considered together by the court, which, subsequently, sustained the plaintiff's motions and entered a decree granting the relief requested in the complaints. The defendants filed these appeals which were consolidated for argument in this Court and will be disposed of in this one opinion.

An examination of the record discloses the following facts were admitted and thus established by the pleadings.

The Everson Evangelical Church of North America, a Pennsylvania nonprofit corporation [hereinafter referred to as Everson], and The Mt. Olive Evangelical Church of North America, an unincorporated association [hereinafter referred to as Mt. Olive], were members of and subscribed to the doctrine and jurisdictional control of The Evangelical United Brethren Church in Christ [hereinafter referred to as E.U.B.], a hierarchically governed religious denomination. In 1967, E.U.B. and The Methodist Church, also a church of national dimension, approved a plan of union to merge into The United Methodist Church, also hierarchically governed. This plan of union was approved in a formal action by the governing bodies of E.U.B. and The Methodist Church, as well as a majority of the lay representatives of both organizations. However, the representatives of both Everson and Mt. Olive voted against the proposal at the conference at which the plan was adopted. The proposed merger was finalized in July 1969.

The nominal titleholder of Everson's realty is The "Everson Church Of The Evangelical United Brethren Church, a Pennsylvania Nonprofit Corporation." The nominal title to Mt. Olive's realty is the names of certain individuals as trustees for Mt. Olive.

By virtue of provisions in the Book of Discipline and the Constitution of The United Methodist Church, The United Methodist Church governs all matters relating to the use and disposition of all property held by a member church, as well as the appointment of ministers to said church. A similar provision is included in the Discipline of E.U.B.

In May 1970, Everson and Mt. Olive decided by the unanimous vote of their respective memberships to disassociate from The United Methodist Church and to become affiliated with The Evangelical Church of North America. The Reverend Robert B. Patton, who was serving both Everson and Mt. Olive as pastor, requested and was granted permission to withdraw from the ministry of The United Methodist Church.

After repeated demands failed to have Everson and Mt. Olive use their church property in accordance with the Book of Discipline of The United Methodist Church, these actions were instituted. The plaintiff is part of the organizational hierarchy of The United Methodist Church and has jurisdiction over the area in which Everson and Mt. Olive are geographically located.

It has long been established in Pennsylvania that when a local church is a member of and subscribes to the doctrine and control of a hierachically governed denomination, it cannot sever itself from such religious denomination without forfeiting its property to the parent denomination. See *Erie Conference Central Office, The United Methodist Church v. Burdick,* 440 Pa. 136, 269 A. 2d 735 (1970), and *Pilgrim Holiness Church v. Pilgrim Holiness Church of Athens Township,* 436 Pa. 239, 259 A. 2d 870 (1969).

Instantly, as noted before, the appellants admitted in their answers to the complaints: that Everson and Mt. Olive subscribed to the doctrine and were subject to the jurisdictional control of E.U.B., and said religious organization was hierarchically governed. Additionally, it was admitted that E.U.B. merged with The Methodist Church into The United Methodist Church, another hierarchically governed religious denomination, and that the Book of Discipline of the said United Methodist Church provides that the parent denomination governs all matters relating to the use of property held by its member churches. In view of these admissions, the decree of the trial court was eminently correct and will be affirmed.

Appellants urge the Pennsylvania rule, as enunciated in *Erie Conference Central Office, The United Methodist Church v. Burdick,* supra, and other Pennsylvania cases, cited hereinbefore, is unconstitutional and is violative of the Establishment Clause of the First Amendment to the United States Constitution, because it differentiates "church property law from general property law which would normally be applicable to any secular association or individual. . . ." This position is completely negated by the approach and ruling of the United States Supreme Court in *Watson v. Jones,* 13 Wall 679, 20 L. Ed. 666 (1872), which was affirmatively cited in the recent case of *Presbyterian Church In the United States v. Mary Elizabeth Hull Memorial Presbyterian Church,* 393 U.S. 440, 89 S. Ct. 601 (1969). See also *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in North America,* 344 U.S. 94, 73 S. Ct. 143 (1952); *St. John Chrysostom Greek Catholic Church of Pittsburgh v. Elko,* 436 Pa. 243, 259 A. 2d 419 (1969), cert. denied, 399 U.S. 920, 90 S. Ct. 2258 (1970); and *St. Michael and Archangel Russian Orthodox Greek Catholic Church v. Uhniat,* 436 Pa. 222, 259 A. 2d 862 (1969), cert. denied, 400

U.S. 823, 91 S. Ct. 45, rehearing denied, 400 U.S. 930, 91 S. Ct. 183 (1970).

It is true that courts are proscribed from turning to an interpretation of ecclesiastical law in resolving title, and the right to possession of church property. In fact, courts may not inquire into ecclesiastical questions. See *Presbyterian Church in the United States v. Mary Elizabeth Hull Memorial Presbyterian Church,* supra. However, courts are not proscribed from entertaining and resolving such disputes if such can be resolved by the application of "neutral principles of law." And, this is such a case.

The Book of Discipline of The United Methodist Church is a contractual agreement between the parent denomination and its members. Enforcing this agreement, as we do in this case, does not require interpretation of doctrinal or theological matters. See *Maryland & Virginia Eldership of the Churches of God v. The Church of God at Sharpsburg, Inc.,* 254 Md. 162, 254 A. 2d 162 (1969), affirmed, 396 U.S. 367, 90 S. Ct. 499 (1970).

Decree affirmed. Each side to pay own costs.

Mr. Justice MANDERINO concurs in the result.

Mr. Justice ROBERTS took no part in the consideration or decision of this case.